FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK

NOV 17 2020

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY _____ mini _____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

In re:

ROBIN BLOUNT,

                Debtor.

---

Case No. 14-21449 (JNP)

Chapter 7

## MEMORANDUM DECISION RELATED TO
## TRUSTEE'S OBJECTIONS TO DEBTOR'S EXEMPTIONS

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Joseph Marchand, the Chapter 7 Trustee (the "Trustee") filed a motion (the "Motion") objecting to several exemptions claimed by Robin Blount (the "Debtor"). Dkt. No. 104. The Debtor opposed the Motion. Dkt. No. 106. The Court heard argument on the Motion on August 11, 2020. For the reasons discussed below, the Court grants the Motion, finding that the Debtor may exempt assets only up to the statutory limitations, and that all of the assets at issue in this Motion are property of the estate.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### Background

In 2013, the Debtor initiated a personal injury action tied to a vaginal mesh product (the "Vaginal Mesh Case"). Dkt. No. 87. The following year, on June 2, 2014 (the "Petition Date"), the Debtor filed a petition under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). Dkt. No. 1. In relevant part, the Debtor's schedules disclosed a savings account at Members 1st of NJ Federal Credit Union ("Members 1st") having a balance of $5.00 and a checking account at Susquehanna Bank ("Susquehanna Account") with a balance of $10.00, but

did not disclose the Vaginal Mesh Case. Dkt. No. 1. The Debtor exempted the balances listed in

both accounts under section 522(d)(5) of the Bankruptcy Code. Id. During the pendency of her

Chapter 13 case, the Debtor was involved in an automobile accident (the "Auto Accident Case"

and, with the Vaginal Mesh Case, the "Personal Injury Cases"). Dkt. No. 87. The Debtor did not

amend her schedules to disclose the Auto Accident Case.

The Debtor voluntarily converted her case to Chapter 7 on July 15, 2016, and the Trustee

was appointed. Dkt. No. 55 and 57. The Debtor did not amend her schedules A/B or C to disclose

the Personal Injury Cases and when asked during the meeting of creditors if she had the ability to

sue anyone for any reason, the Debtor responded "no." Dkt. No. 87. On October 3, 2016, the

Trustee issued a final report, stating that there would be no distribution to creditors and that the

remaining scheduled assets were being abandoned. The Debtor received her discharge on October

28, 2016. Dkt. No. 68. On June 14, 2017, the Debtor filed the Auto Accident Case as a personal

injury action in state court.

On June 26, 2018, the Debtor's state court attorney notified the Trustee of the Vaginal

Mesh Case, and the Trustee later learned of the Auto Accident Case. Dkt. No. 87. Both Personal

Injury Cases have settled; the Auto Accident Case for a gross amount of $85,000, and the Vaginal

Mesh Case for a net amount of $28,325.32 to the Debtor. Dkt. No. 104. The Bankruptcy Case was

reopened on May 9, 2019. Dkt. No. 75. The Debtor filed amended schedules (the "Amended

Schedules"), which disclosed the Personal Injury Cases, and sought to exempt the award proceeds

as follows: Vaginal Mesh Case $22,975 under section 522(d)(11)(D) and $5,350.32 under section

522(d)(5); and Auto Accident Case 100% of the statutory limit under section 522(d)(11)(D) and

$6,909.68 under section 522(d)(5). The Amended Schedules are otherwise substantively identical

to the initial schedules. Id.

The Trustee then filed the Motion, which includes attachments showing that the

Susquehanna Account held a balance of $1,821.27 on the Petition Date. Dkt. No. 104 Ex. D.

2

Additionally, the Trustee learned that the Debtor received a $4,434 refund on her 2014 tax returns. Id. Ex. B. The Trustee argues that the estate is entitled to 50% of that amount ($2,217)[1] because the Petition Date was June 2, 2014 and the Debtor did not exempt the refund. Id. The Trustee states he learned of the Refund and the true balance of the Susquehanna Account prior to the Debtor's discharge, but did not pursue collection of the unexempted funds at that time because he was not aware of the Personal Injury Cases and believed that if he pursued those assets the Debtor would have amended her exemptions and the case would have remained a no-asset case. In effect, the Trustee concluded requiring the Debtor to amend her exemptions would have been a waste of time. Id.

The Motion raises two objections to the Debtor's claimed exemptions. Dkt. No. 104. First, the Trustee argues the Debtor may only claim an exemption under section 522(d)(11) for one of the Personal Injury Cases - not both. Second, the Trustee argues that Debtor is exceeding the allowed exemption amount under section 522(d)(5), because she is not accounting for the entire balance in the Susquehanna Account or the Refund. Id. Specifically, the Trustee argues that when adding together the full $1,821.27 balance of the Susquehanna Account, the Refund, and the payout from the Vaginal Mesh Cash and other assets exempted by the debtor under 522(d)(5), the Debtor's attempt to exempt $6,909.68 of the Auto Accident Case exceeds the statutory cap.[2] Id.

The Debtor's opposition argues that section 522(d)(11)(D) permits a debtor to exempt multiple payments of the statutory exemption amount if they result from multiple personal injuries. Dkt. No. 106. As to the Trustee's second objection, the Debtor argues that the Trustee abandoned

---

[1] The Trustee is not entitled to half of the total tax refund because the Debtor filed 153 days into 2014. Which means that 153/365ths of the $4,434 tax refund, or $1,858.64 (the "Refund") is property of the estate.

[2] The Trustee's figures are inaccurate because the portion of the 2014 tax refund that belongs to the estate is less than he asserts, and because he asserts that the Debtor failed to exempt the $5.00 in the Members 1st account. Schedule C shows that this amount was exempted.

3

the Refund and the Susquehanna Account under section 554(c) of the Bankruptcy Code when the

case was closed and, therefore, they are no longer property of the estate. Id.

### Discussion

There are two issues before the Court. The first relates to the statutory cap of $22,950[3]

under section 522(d)(11)(D) of the Bankruptcy Code. The Court must determine whether section

522(d)(11)(D) permits the Debtor to claim two exemptions of $22,950 for two separate personal

injury actions, or whether the Debtor is limited to only a single exemption of up to $22,950,

regardless of the number of injuries suffered. The second issue is whether the Trustee may

administer the unexempted funds in the Susquehanna Account and the Refund that were not listed

on the Debtor's initial schedules, or if these assets were permanently abandoned by the Trustee

under section 554(c) upon the closing of the case.[4]

A.    Section 522(d)(11)(D) Exemptions

Courts are split on whether a debtor may claim multiple section 522(d)(11)(D) exemptions

on account of multiple personal injury recoveries. Some courts have allowed a debtor to claim an

exemption for each separate incident while others have limited the exemption to one total amount.

Compare Christo v. Yellin (In re Christo), 192 F.3d 36 (1st Cir. 1999), and In re Phillips, 485 B.R.

53 (Bankr. E.D.N.Y. 2012), with In re Comeaux, 305 B.R. 802, 806-07 (Bankr. E.D. Tex. 2003),

and In re Daly, 344 B.R. 304 (Bankr. M.D. Pa. 2005).

The Court begins its inquiry by reviewing the language of the statute. See Good Samaritan

Hosp. v. Shalala, 508 U.S. 402, 409 (1993). "Courts must presume that a legislature says in a

statute what it means and means in a statute what it says there. When the words of a statute are

unambiguous, then, the first canon is also the last: 'judicial inquiry is complete.'" Connecticut

---

[3] The parties do not dispute that this is the statutory cap allowed as of the Petition Date.
[4] The Trustee argues the Debtor is required to exempt the full balance of the Susquehanna Account
and the Refund. As explained below, the Trustee cannot require the Debtor to exempt any assets,
however, the pertinent issue is whether these assets were abandoned or remain property of the
estate that may be administered by the Trustee unless the Debtor exempts them.

Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Thus, courts apply the plain meaning of a statute, unless the statute is ambiguous or applying the unambiguous plain meaning would yield an absurd result. Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n, 530 U.S. 1, 6 (2000). Further, "the plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992)). If a statute is ambiguous, courts use canons of statutory construction, and if ambiguity remains may resort to legislative history. United States v. Colasuonno, 697 F.3d 164, 173 (2d Cir. 2012) (citing Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 423 (2d Cir. 2005) (citations omitted); see also Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008)). Therefore, the Court begins by reviewing section 522(d)(11)(D) of the Bankruptcy Code, which allows an exemption for:

> (11) The debtor's right to receive, or property that is traceable to –
>
> \*   \*   \*
>
> (D) a payment, not to exceed $22,975, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent . . . .

11 U.S.C. § 522(d)(11).

As with other courts that have considered section 522(d)(11)(D), the Court concludes that this section is ambiguous and subject to more than one interpretation. See Christo, 192 F.3d at 38; In re Daly, 344 B.R. 304, 314 (Bankr.M.D.Pa.2005) (citing Christo, 192 F.3d at 40–41 (Gibson, J., dissenting)) ("The statute simply does not say whether 'a payment . . . on account of personal bodily injury' refers to one or more such payment.").

In considering section 522(d)(11)(D), the court in Christo determined that "[w]hile there is some ambiguity, the more natural reading is that there is a single exemption." Christo, 192 F.3d at 38. A portion of the First Circuit's explanation relied on the premise the opposing interpretation

5

would yield an absurd result in which someone that was involved in multiple minor accidents would receive a greater exemption than a person who sustained major injuries in one accident. See id. The dissent in Christo noted that it is equally "plausible that the term 'a payment on . . . account of personal bodily injury' can be applied to each such payment," making it proper for a debtor to claim multiple Section 522(d)(11)(D) exemptions. Id. at 40 (Gibson, J., dissenting). Several courts outside the First Circuit have declined to follow the majority's conclusion, instead adopting the dissent's conclusion and allowing a debtor to claim multiple section 522(d)(11)(D) exemptions. See, e.g., Daly, 344 B.R. 304; Comeaux, 305 B.R. 802. In Comeaux, the court looked beyond the specific language of the statute and considered the broader context of the statue as a whole, noting that Congress used "numeric limits and aggregate monetary caps in order to constrict a debtor's ability to exempt property from the scope of the bankruptcy estate." Id. at 807 (citing 11 U.S.C. § 522(d)(1), (2), (3), (4), (5), (6), and (8)). Given this, and considering that exemptions should be considered liberally, and given the ambiguity of section 522(d)(11)(D), the court concluded that the debtor should be allowed to exempt multiple injuries. See id.; see also Daly, 334 B.R. at 315 (adopting conclusion of Comeaux).

In contrast to these cases, the court in Phillips, determined that, by applying the Bankruptcy Code's rules of statutory construction, any ambiguity was resolved. Phillips, 485 B.R. at 57. Specifically, section 102 provides that "In this Title – (7) the singular includes the plural." 11 U.S.C. § 102(7). "Thus, section 522(d)(11)(D)'s term 'a payment' encompasses both a singular payment as well as multiple payments, and the term 'injury' includes multiple injuries." Phillips, 485 B.R. at 57. Reading the statute as directed by section 102(7), a debtor may exempt "a payment [or payments], not to exceed $22,975, on account of personal bodily injury [or injuries]." Id.; see also 11 U.S.C. § 522(d)(11)(D). Under this interpretation, the statute creates a monetary cap on payments received on account of bodily injury, regardless of how many injuries a debtor has suffered.

The Court is persuaded by the rationale in <u>Phillips</u>. Statutory interpretation in this Circuit requires the court to start with the plain language of the statute, and to resolve any ambiguities by using the rules of construction provided by the Bankruptcy Code. <u>In re Tribune Co.</u>, 464 B.R. 126, 182 (Bankr. D. Del.), <u>on reconsideration in part</u>, 464 B.R. 208 (Bankr. D. Del. 2011), <u>aff'd sub nom. In re Tribune Media Co.</u>, 587 B.R. 606 (D. Del. 2018), <u>aff'd sub nom. In re Tribune Co.</u>, 972 F.3d 228 (3d Cir. 2020). By using the rules of statutory construction found within the Bankruptcy Code, <u>see</u> 11 U.S.C. § 102(7), the ambiguity is resolved because there is no longer a question of how many payments may be exempted, but instead the statute creates a simple monetary limitation on the amount that may be exempted for any such payments. Further, this construction is consistent with caselaw in this Circuit, which has applied section 102(7) to resolve similar ambiguities in the Bankruptcy Code. See <u>In re Transcon. Refrigerated Lines, Inc.</u>, 438 B.R. 520, 522 (Bankr. M.D. Pa. 2010) (finding that, under section 102(7) of the Bankruptcy Code, the word "transfer" in Section 547(c)(9) should include the plural "transfers" allowing a party to aggregate the transfers to meet the monetary floor of Section 547(c)(9)). Finally, this interpretation avoids the absurd potential outcome under the opposing interpretation – debtors with the same amount of damages from bodily injuries would be treated differently depending on whether those injuries resulted from one or more incidents.

Considering the above analysis, the Court interprets the language of section 522(d)(11)(D) to create a statutory cap on the amount money from payments on account of bodily injury that may be exempted by a debtor. As such, the Trustee has satisfied his burden of proof in establishing that the exemptions were not properly claimed. <u>See</u> Fed. R. Bankr. P. 4003(c). Section 522(d)(11)(D), read in light of section 102(7), authorizes the Debtor to exempt the right to receive either a payment or multiple payments received on account of either or both the Personal Injury Cases, but limits the total exemption amount to the statutory cap of $22,975. The Motion will be granted on this issue.

### B.    Section 522(d)(5) Exemptions

As noted, the Court rejects the Trustee's argument that the Debtor be required to exempt the Refund and the remaining balance of the Susquehanna Account. However, if these assets are property of the estate, then they must be turned over to the Trustee to be administered, unless the Debtor exempts them under section 522(d)(5). As such, the Court must determine whether these assets were abandoned by the Trustee upon the initial closing of the case and therefore are no longer property of the estate.

### 1.    Abandonment

Section 521(a)(1) of the Bankruptcy Code requires a debtor to "file necessary declarations adequately, honestly, and in good faith." In re Kane, 628 F.3d 631, 636 (3d Cir. 2010) (citing 11 U.S.C. § 521(a)(1)). Under the Bankruptcy Code debtors have an affirmative duty of full disclosure. Id. "Because such disclosure 'allows the trustee and the creditors to determine whether' to pursue these assets 'the importance of full and honest disclosure cannot be overstated.'" Id. at 636-37 (quoting In re Costello, 255 B.R. 110, 113 (Bankr. E.D.N.Y. 2000)). Section 521 requires the debtor to schedule all assets and provide an "estimated value" for each one. Id. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.

However, property of the estate may be abandoned by a trustee. Section 554 of the Bankruptcy Code provides:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> *    *    *
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554 (emphasis added). The language of section 554 specifies that any property scheduled is abandoned and considered to be "administered" at the closing of the case. In re Reilly, 2013 WL 135179, at *2 (D.N.J. Jan. 8, 2013) (citing 11 U.S.C. § 554(c)).

However, the property must be properly scheduled by a debtor, as well as unadministered by the trustee, in order to be technically abandoned pursuant to section 554(c). Id. The Third Circuit has repeatedly found that "an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554." Kane, 628 F.3d at 637 (quoting Hutchins v. I.R.S., 67 F.3d 40, 43 (3d Cir. 1995)); see also Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir.1991) (refusing to find unscheduled cause of action abandoned even though trustee was aware of it prior to closing of the case); In re Medley, 29 B.R. 84, 86–87 (Bankr. M.D. Tenn. 1983) (unscheduled refund claim not abandoned); DiStasio v. United States, 22 Cl. Ct. 36, 52 (1990) (claim for refund abandoned only if scheduled); Weiner v. United States, 15 Cl. Ct. 43, 45 (1988) (unscheduled tax refund claim is property of bankrupt estate). Moreover, abandonment under section 554(c) depends not only on the scheduling of an asset in general terms, but upon the "proper" scheduling, including the value of the asset. In re Shultz, 509 B.R. 190, 200–01 (Bankr. N.D. Ind. 2014) (citing Mele v. First Colony Life Ins. Co., 127 B.R. 82, 85–86 (D.D.C.1991)); see also In re Stevens, 617 B.R. 328, 330 (B.A.P. 9th Cir. 2020).

In this case, the Debtor did not schedule or exempt the Refund. Further, on the Petition Date, the Susquehanna Account held $1,821.27, but the Debtor only disclosed and exempted $10.00 from that account. However, the Debtor posits that these assets were abandoned by the Trustee upon the filing of his final report and therefore are no longer property of the estate.[5] The

---

[5] The Debtor also argues that the time to object to these exemptions has expired. However, other than $10 in the Susquehanna Account, since the Debtor never scheduled nor claimed an exemption in these assets, the time to object has not run.

Debtor argues that, although unscheduled, the Trustee learned of the assets before the case was closed and, therefore, the assets should be considered to have been properly scheduled and abandoned. The Trustee disagrees, arguing that these assets were not abandoned, or in the alternative that abandonment was revoked upon the reopening the case.

The plain statutory language and the binding caselaw in this Circuit requires that in order for property to be abandoned pursuant to section 554(c), the debtor must properly schedule the property before the close of the case. Kane, 628 F.3d at 637 (quoting Hutchins, 67 F.3d at 43). Further, courts in several circuits have found that the mere fact that the trustee discovered the assets existed prior to closing the case does not alter this result. See e.g., Jeffrey v. Desmond, 70 F.3d 183 (1st Cir.1995) (unscheduled asset was not abandoned, regardless of whether the debtor discussed the asset with the trustee); Vreugdenhill, 950 F.2d 524, 526 (refusing to find unscheduled cause of action abandoned even where trustee was aware of it prior to abandonment); In re Shultz, 509 B.R. 190, 199 (Bankr. N.D. Ind. 2014); Bowie v. Rose Shanis Fin. Servs., LLC, 862 A.2d 1102, 1111 (2004). Finally, as the Shultz court explained, a trustee has a fiduciary duty to maximize the value of the estate. 509 B.R. 201 (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 353 (1985)). Thus, the proper scheduling of the estimated value of the assets is also, to some extent, a requirement for abandonment to occur at the closing of the case.

Here, the Debtor failed to schedule the Refund and as such, the Refund was not abandoned by the Trustee at the closing of the case even though the Trustee learned of the asset before the case was closed.

The Susquehanna Account requires a more in-depth analysis. While the Court acknowledges that accurate valuation can, to an extent, impact whether the asset has been "properly" scheduled, the Bankruptcy Code only requires the Debtor to make a good faith estimation of an asset's value. See In re Baker, 2020 WL 3815280, at *4 (Bankr. D. Kan. 2020) ("Courts generally understand that values ascribed to assets by debtors may be estimates, leading

to some grace being permitted in those estimates' accuracy.") Therefore, a debtor is not required to list exact valuations for property to be considered "properly scheduled." However, as noted, these schedules and valuations are used by a trustee to fulfill his fiduciary obligations to maximize the value of the estate. Shultz, 509 B.R. at 200. Allowing a debtor to completely disregard the true value of assets would frustrate a trustee's ability to fulfill these obligations, and moreover, would encourage debtors to not schedule assets, or schedule them as having only de minimus value, hoping that a trustee may not administer those assets and allow the case to close. Not allowing a trustee to marshal these assets if the case is reopened upon discovering the true value of the estate, would prejudice trustees and creditors.

Indeed, this is exactly what happened in this case, the Debtor scheduled the Susquehanna Account at less than 1% of its value, and failed to disclose or undervalued multiple assets, and the Trustee, having discovered only a portion of the unscheduled assets, decided not to pursue them because the Debtor would have been able to amend her schedules and exempt them. To permit the Debtor to now profit from these omissions at the expense of the estate's creditors would violate the plain language of section 554(c) as well as the intent of the Bankruptcy Code. As such, while the Court recognizes that debtors need not provide precise valuations of assets on their schedules for them to be "properly scheduled," they are required to make a good faith effort to accurately estimate their value. An estimate of less than 1% of the asset's actual value is not sufficient. The Debtor has not satisfied the requirement to schedule assets honestly and in good faith in relation to the Susquehanna Account. See 11 U.S.C. § 521; Kane, 628 F.3d at 636. The Susquehanna Account was not properly scheduled, and thus was not abandoned under section 554(c).

Because the Susquehanna Account and the Refund were not formally, nor technically abandoned by the Trustee, they remain property of the estate that the Trustee may administer if not exempted by the Debtor.

2.      *Revocation of Abandonment*

Even if the Susquehanna Account and Refund were technically abandoned by the Trustee, the Court concludes that revocation of abandonment is appropriate in this case.

Assets abandoned pursuant to a notice of abandonment under section 554(a) or (b) are generally considered "strictly" irrevocable. In re Reilly, 2013 WL 135179, at *4 (D.N.J. Jan. 8, 2013) (citing In re Woods, 173 F.3d 770, 778 (10th Cir. 1999)). However, an abandonment that occurs pursuant to section 554(c) occurs by operation of law and not by court order. In re Reiman, 431 B.R. 901, 909 (Bankr. E.D. Mich. 2010). As such, courts have held that an abandonment under section 554(c) "must be viewed as raising a 'rebuttable presumption' that the technically abandoned property should continue to remain abandoned." Reilly, 2013 WL 135179, at *4 (citing Woods, 173 F.3d at 778) (quoting 3 William L. Norton, Jr., Norton Bankruptcy Law and Practice § 53:3 (2d ed.1995 & supp. 1998)). This is particularly true when a trustee was given incomplete or false information. In re Sas, 488 B.R. 178, 182 (Bankr. D. Nev. 2013) (citing In re DeVore, 223 B.R. 193, 197 (B.A.P. 9th Cir.1998)).

In determining whether it is appropriate to revoke abandonment of assets, courts have applied Federal Rule of Civil Procedure ("Rule") 60(b), made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024. Reilly, 2013 WL 135179, at *4 (citing Woods 173 F.3d 770; LPP Mortgage, Ltd. v. Brinley, 547 F.3d 643, 649 (6th Cir. 2008)). The flexibility of the Rule 60(b) analysis provides a bankruptcy court with discretion to determine if the facts and circumstances presented make revocation appropriate. Id. 2013 WL 135179, at *4. Rule 60(b), provides that a court may relieve a final judgment based on the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is
based on an earlier judgment that has been reversed or vacated; or
applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The Sixth Circuit considered in this question in <u>LPP Mortgage</u>, in which the trustee filed a

motion to close the bankruptcy case while the debtor's motion to avoid a lien was pending.[6] 547

F.3d at 645. Based on the trustee's understanding of the law, the lien would only be partially

avoided and the resulting equity could be claimed as exempt by the debtor. <u>See id.</u> This was in fact

how the bankruptcy court ruled, leaving a lien of $94,000 on the property. However, the Sixth

Circuit reversed in part finding that the creditor's lien was reduced to only $13,654.91. The trustee

moved to reopen the case and revoke the abandonment of the asset joined in LPP's motion to

preserve the unencumbered equity for the bankruptcy estate. <u>Id.</u> The bankruptcy court ruled the

trustee's "reliance upon well-established law regarding priorities and lien avoidance was certainly

reasonable," and that revocation was appropriate under Rule 60(b)(1) as excusable neglect. <u>Id.</u> at

650. Further, the debtor's receipt of a windfall at the expense of estate creditors from the resulting

avoidance of the lien was inequitable. <u>Id.</u> The Sixth Circuit affirmed, ruling that, regardless of

whether this qualified as "excusable neglect," revocation was certainly within the bankruptcy

court's discretion and appropriate under Rule 60(b)(5) and (6), as equitably appropriate. <u>Id.</u> The

Sixth Circuit found that the bankruptcy court did not abuse its discretion, and further, that the

debtor's argument, "that revoking the abandonment will result in a windfall to the creditors is

illogical" because the creditors were "merely seeking to recoup a portion of what they were owed."

<u>Id.</u> Additionally the equities weighed in favor of revoking abandonment. <u>Id.</u>

Similarly, the Court finds that revocation of abandonment is appropriate in this case under

Rule 60(b)(6). The Debtor failed to schedule several assets, and significantly underestimated the

---

[6] <u>LPP Mortgage</u> was a consolidation of two appeals dealing with the same issue, however the facts
laid out here sufficiently describe the pertinent facts in both cases. <u>See</u> 547 F.3d at 645-47.

value of another asset. The Trustee relied on the Debtor's disclosure and determined that, while the Debtor should have scheduled and exempted the Refund and the full balance of the Susquehanna Account, pursuing the assets would be futile because even adding their value to the other scheduled assets, the total value was under the statutory cap of section 522(d)(5), and the Debtor would ultimately amend her schedules to claim them as exempt. Now that the Debtor has disclosed the Personal Injury Cases, her assets greatly exceed the statutory cap of section 522(d)(5). The Trustee should be entitled to rely on the Debtor properly disclosing all assets, and permitting the Debtor to receive a windfall due to her failure to fulfill her disclosure obligations under the Bankruptcy Code would be inequitable.

Therefore, to the extent they were abandoned, the Court finds revocation of abandonment appropriate, and the Refund and the unexempted balance of the Susquehanna Account as of the Petition Date are property of the estate. The Debtor may choose to exempt all or any portion of these, along with the payouts from the Personal Injury Cases up to the statutory cap under section 522(d)(5). But any amount not claimed as exempt must be turned over to the Trustee for distribution.

### Conclusion

The Debtor may exempt a total amount of $22,975 under section 522(d)(11)(D) on account of the Personal Injury Cases. Moreover, the Refund, and the full balance of the Susquehanna Account remain property of the estate, as they were not properly scheduled. To the extent they were abandoned under section 554(c), the Court finds it appropriate to revoke such abandonment. The Debtor may exempt these assets under section 522(d)(5) up to the aggregate statutory cap. Therefore, the Motion to object to Debtors exemptions is granted.

Dated: November 16, 2020

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE